Botts v. Spencer.

ELIZABETH BOTTS, Respondent, v. THOMAS F. SPENCER *et al.*, Executors of ELIJAH HARVEY, Deceased, Appellants.

Kansas City Court of Appeals, November 10, 1890.

1. **Sale : PRICE : RECOVERABLE.** Where, in 1859, a father received back from a married daughter a slave and agreed to give another in lieu thereof or pay a certain sum before or at his death, and fails to do either, the daughter can recover the contract price from the father's executors.

2. **Husband and Wife : WIFE'S CHATTELS.** While, in 1859, the chattels of the wife vested in the husband, yet the husband might forego his right and permit the wife to retain control thereof free from any claim on his part.

3.  **Consideration:** PURCHASE: POSSESSION. A person who holds
possession of chattels, under a purchase, shall not be allowed to
deny the consideration of his promise to pay for them.

*Appeal from the Linn Circuit Court.*—HON. G. D.
BURGESS, Judge.

AFFIRMED.

Statement of case by the court.

The plaintiff, Mrs. Botts, is the widowed daughter
of Elijah Harvey, deceased.   It seems that Mr. Harvey
died in Linn county, Missouri, in 1887, and that Mrs.
Botts presented in the probate court for allowance
against her father's estate a claim which was there
allowed ; was then appealed to the circuit court ; there
tried before jury, resulting in a verdict and judgment
for plaintiff for $509.88, from which the executors of
the estate have appealed to this court.   The facts giv-
ing rise to the controversy are fairly stated by plaintiff's
counsel as follows :

Elijah Harvey gave to the plaintiff, his daughter,
upon her marriage, or soon thereafter, a negro girl, a
slave named Seely, which the plaintiff retained for
several years ; but the girl having become ungovernable
the plaintiff concluded to dispose of her.   This, it
seems, was within or about the month of February,
1859.   Maj. Seth Botts, a brother of plaintiff's hus-
band, having heard that she desired to sell the slave,
offered to purchase her at the price of six hundred dol-
lars.   The plaintiff deferred closing the sale until she
could confer with her father about it, as she feared she
might displease her father by selling the slave " out of
the family."   A conference was had between plaintiff
and her father, and at which an arrangement and contract
was made, as testified to by Maj. Seth Botts, in sub-
stance as follows :   That said Elijah Harvey would take
the girl Seely, and let the plaintiff have either one of
two other negro girls, then slaves and owned by said

Harvey, or that if she, plaintiff, did not take either of said girls in place of Seely, he said Elijah Harvey would pay plaintiff six hundred dollars for Seely, which said amount should be paid on or before said Harvey's death. The girl, Seely, was delivered to Elijah Harvey by his daughter, the plaintiff, under this contract. After that Mr. Harvey treated this girl as the others of his slaves; receiving the benefit of her services, hiring her out and receiving the wages, etc., until she became free. But the plaintiff never received any other slave for Seely, and did not receive any money from her father until within the year 1883, when he gave one hundred dollars to plaintiff; but as to whether or not this was intended to be on account of the girl, Seely, is, under the evidence, left in doubt. It seems that Mr. Harvey gave to each of his children upon their respective marriages six hundred dollars or property of that value. In this regard, Mrs. Alice B. Anderson, a witness for defendants, testified : "Father gave to each of the children after they got married, except to Mrs. Wolfskill and plaintiff (to each of whom he gave a negro), land valued at six hundred dollars, or that amount of money. Aside from the negro girl, Seely, which father took back, I do not know that the plaintiff received anything from my father, except the one hundred dollars the plaintiff told me father gave her."

*E. J. Broaddus*, for appellants.

I contend that the demurrer to plaintiff's case, or fendants' first instruction should have been given, and we think the court erred in refusing defendants' second instruction. *Mansur v. Botts*, 80 Mo. 657; *Glass v. Gelvin*, 80 Mo. 297; *Brown v. Railroad*, 80 Mo. 457; *Bank v. Murdock*, 62 Mo. 70; *Moddrell v. Riddle*, 82 Mo. 31; *Walker, Adm'r, v. Walker*, 25 Mo. 367; *Borgraefe v. Knights of Honor*, 22 Mo. App. 127; *Lionberger v. Pohlman*, 16 Mo. App. 392; 398.

*A. W. Mullins*, for respondent.

(1) The objections raised by defendants' counsel have neither the evidence nor the law to support them, and are wholly without merit. *Gooch v. Hollan*, 30 Mo. App. 450, 454; *Carson v. Porter*, 22 Mo. App. 179, 184; *Samuel v. Potter*, 28 Mo. App. 365, 369; *Hipsley v. Railroad*, 88 Mo. 348, 353, and cases there cited. (2) The plaintiff's first instruction presented the issues in the case for the determination of the jury, together with the law applicable thereto, correctly. *Thompson v. Kellogg*, 23 Mo. 281; 2 Greenl. on Ev., sec. 516, and note. (3) The defendants' second instruction was properly refused. The fact that the plaintiff was a married woman when her father gave her the slave, Seely, did not preclude the plaintiff from retaining the ownership of the girl in plaintiff's own right, nor necessarily vest the ownership of the girl in plaintiff's husband. *Morrison v. Edgar*, 16 Mo. 411; *Dougherty v. Chapman*, 29 Mo. App. 233; *Botts v. Gooch*, 97 Mo. 88; *Matheny v. Mason*, 73 Mo. 677; *Pulliam v. Burlingame*, 81 Mo. 111; *McGiffin v. Baird*, 62 N. Y. 329.

GILL, J.—Upon an examination of this record we discover no substantial reason for disturbing the judgment of the lower court. Defendants' counsel urges, with apparent sincerity, that a demurrer to plaintiff's evidence should have been sustained, and that plaintiff's instruction, numbered 1, should not have been given. We see little reason for such contention. Although some contradictory evidence was adduced, yet the jury was amply justified in its finding. By said instruction number 1, the jury was told in the words of said instruction, that, "If the jury believe from the evidence that, within or about the year 1859, the plaintiff's father, Elijah Harvey, received from the plaintiff a negro girl, then a slave named Seely, and that, in consideration thereof, the said Elijah Harvey agreed to give

plaintiff either one of two negro girls, then owned by said Harvey, or pay plaintiff for said girl, Seely, the sum of six hundred dollars which should be paid on or prior to the death of said Elijah Harvey ; then if the jury further believe, from the evidence, that the plaintiff never received from said Elijah Harvey another slave in place of and for said girl, Seely, and that he never paid her the contract price for said slave, the jury should find for the plaintiff." The jury, on unobjectionable testimony, found the existence of the facts upon which the instruction is based, and such facts clearly warrant a recovery.

Defendant's counsel further complains of the court's refusal to give his second instruction, to-wit : "2. If the jury finds, from the evidence, that Elijah Harvey, during his lifetime, gave to the plaintiff, Elizabeth Botts, then a married woman, the slave, Seely, they are instructed that said gift, accompanied by possession in plaintiff vested the title in her husband, and notwithstanding they may find that afterwards said Elijah Harvey took back said slave, with the understanding that he would pay said plaintiff for the same at some future time, their verdict must be for the defendants." This action of the trial court was entirely proper, while, by the law as it existed in 1859 ( when Mr. Harvey gave the slave to his married daughter ), the chattels of the wife vested in the husband, yet it has been repeatedly held in this state that the husband may forego the exercise of this right to the wife's personal property, and may permit her to retain the control thereof, to manage, use and possess the same as her individual property free from any claim on his part. See *Bethel v. Bailey*, 35 Mo. App. 463, and cases cited at p. 469 ; *Botts v. Gooch*, 97 Mo. 88. It is beyond dispute here that Mrs. Botts received this slave from the father, managed, used and controlled her as her own, and, by her husband's consent, sold her to Mr. Harvey.

Besides, in the words of an authority cited, "the defense is essentially a denial of the consideration of the contract, and it is but reasonable that a person who holds the possession of chattels, under a purchase, shall not be allowed to deny the consideration of his promise to pay for them while his possession is not disturbed." *Morrison v. Edgar*, 16 Mo. 414. Let the judgment of the circuit court be affirmed. All concur.