GEORGE T. WHITE, Defendant in Error, v. DORRIS & WIFE, Plaintiffs in Error.

*Husband and Wife—Execution.*—The property of the wife owned by her at, or acquired by her after marriage, and the interest of her husband therein, is exempt from levy and sale under execution against the husband, (R. C. 1855, p. 754, § 1,) for debts contracted by him before marriage, or the acquisition of such property by the wife.

### Error to Cole Circuit Court.

White sued Dorris and wife in ejectment for the recovery of the possession of certain real estate in the city of Jefferson, in the Cole Circuit Court. The answer denied White's right to the possession of said real estate, and averred that the same was owned by the said Thankful Jane Dorris, and that she was in possession thereof.

The cause was tried by the court.

The following agreed statement of facts was submitted to the court, to-wit:

That Dorris and his wife went into the possession of the property in the spring of 1853. A deed was made to Mrs. Dorris for the property by Judge Kerr (her father), in 1855, for the sum of six hundred dollars. The debt upon which the judgment was obtained, and under which plaintiff purchased in 1857, was contracted about the first of January, 1855; judgment was rendered on this debt in February, 1856. It is agreed that Tom Dorris earned the money that he loaned to his mother at the time he was living in the family of his father, but that he did not take any control of his earnings; also, the paper marked Exhibit A. is filed, wherein it is agreed that if plaintiff is entitled to possession, that he is entitled to one dollar per year for rents and profits from the date of plaintiff's purchase, and five dollars damages.

The agreed statement of W. M. Kerr was read in evidence, which is as follows:

" I did not sell the property to Dorris, but to his wife. They did not go into possession under the agreement that I

made with Dorris to sell the property to him; Mrs. Dorris took possession of the property the day the deed to the property was made, and not until then, as her property. Dorris and wife remained in possession of the property until in 1863; Thomas Dorris was under twenty-one years of age at the time the money was paid me. In 1855, E. B. Cordell bought at sheriff's sale, under execution against A. P. Dorris, the property in controversy; Cordell afterwards told me that he would let me take the property at his bid, which I did, and the sheriff made the deed to me. I told Dorris if he would pay me the money, I would make a deed to him; he failed to do it. About this time I was going to leave this city, and my daughter (Mrs. Dorris) said she would like to buy the property herself, and said she thought she could pay for it. I agreed to let her have it for $650, what I paid for it; she paid me $200, which she borrowed from her son Tom, who had made it by acting as page for the Legislature. I think I made her the deed on 12th of March, 1855; I took her note for the balance of the money, $450; on 29th November, 1856, she paid me $200 more on said note, which amount she borrowed of her sister, Agnes Ramsay; the balance of $250 is still due on said note. A. P. Dorris never paid me one dime on said property; nor was any of his money appropriated to the payment of the same. I did not sell to Mrs. Dorris to defraud her husband's creditors, but because she wanted the property."

Defendant read in evidence the deed from W. M. and Mary M. Kerr to Mrs. Dorris to said house and lot. This was all the evidence in the cause.

The plaintiff then asked the court to declare the law of the case to be as follows, to-wit:

1. If the court finds from the evidence that T. J. Dorris was, at the time of the sale of the property in controversy to her by W. M. Kerr, the wife of the said A. P. Dorris, and that she by such purchase acquired a fee simple title to said real estate, that then it will further find that by virtue of, and under said purchase of said T. J. Dorris, the said A. P.

Dorris acquired a right of possession, or the usufruct of the said property during his natural life; and, further, that the plaintiff, under the said deed to him from the sheriff of Cole county, acquired whatever right the said A. P. Dorris had therein, to hold and enjoy during the life of the said A. P. Dorris; or, in other words, the plaintiff made, and, by virtue of said deed from said sheriff, was remitted to the rights of the said A. P. Dorris in said realty.

2. Even though the court may find that the alleged title of plaintiff was acquired in the real estate in controversy under a sale made by the sheriff of Cole county, under an execution issued upon a judgment against the husband alone, for a debt contracted by him before the purchase of said real estate by his said wife, yet the plaintiff thereby acquired the right of the husband therein, and is entitled to enjoy the same during the life of the said A. P. Dorris under said sheriff's sale.

3. The husband is entitled to all or any property the wife may acquire during coverture by her labor or acts; and if the said T. J. Dorris borrowed the means to purchase the real estate in controversy, then, as soon as the same was in her possession, it became the money of the said A. P. Dorris; and the payment of the same by her to W. M. Kerr could not operate to defeat his creditors from subjecting the same to the payment of his debts, or any property purchased therewith.

Which instructions were given. Defendant objected, which objection was overruled by the court, and defendant excepted.

Defendant asked the following instructions:

1. That if the evidence shows that Mrs. Dorris acquired the real estate in controversy from her father, by purchase with her own money, 12th of March, 1855, and that she then went into possession by virtue of said purchase, and that the debt of A. P. Dorris, her husband, upon which judgment was had by Russell and Schott, and under which plaintiff purchased, was contracted about the 1st of January, 1855, prior to the time Mrs. Dorris took possession under and by

virtue of her purchase, and prior to the time of her purchase itself, the plaintiff cannot recover in this suit.

2. Although the evidence may show that Dorris and wife were in possession of said premises prior to the contracting of the debt above mentioned, yet if such possession was without color or pretence of title the plaintiff cannot recover.

3. Under the act of 1849, the interest of a husband in his wife's real estate is not subject to sale under execution for debts of the husband contracted prior to the time the wife came into possession of such property.

4. Property owned by a married woman before her marriage, or which may be acquired by her after marriage by descent, gift, grant, devise or otherwise, and the use and profits thereof, is exempt from sale under execution for all debts of her husband contracted by him prior to the time the wife came into possession of such property.

The first and second of said instructions were refused; defendant excepted. The court found the issues for the plaintiff.

*E. B. Ewing*, for plaintiff in error.

I. The instructions given for the defendant in error declare (or intended to declare) the marital rights of the husband, in the wife's real estate, as they existed at common law, disregarding the statutory provision, which materially modifies the common law in this respect, and should have been refused. They are erroneous, also, in declaring that if Mrs. Dorris acquired the fee in the real estate purchased, her husband thereby acquired a right of possession during his natural life. He only could acquire in such case, even at common law, a right to the rents and profits during the joint lives of himself and wife, or during coverture. He could acquire no right as tenant (by the curtesy, of course) until the death of the wife.

II. In the case at bar, the property in controversy was acquired by Mrs. Dorris at a time, and in a manner, and by such means, as brings it within the exemption of the stat-

ute. (R. C. 1855, p. 754.) The debt of her husband, for which it is sought to make the property liable, was contracted previous to the time she came into possession of the property, (namely, 1st January, 1855,) the possession having been acquired in March, 1855; and the property was purchased by her with her own money, and not that of her husband. The evidence is clear, that the money paid was her own; a part of it was obtained from her son, the proceeds of his own earnings, which his father did not pretend to control.

A father may claim the services of his children whilst they are under lawful age, and are supported by him; but should he at any time relinquish that claim, the profits of his children's labor then belong to themselves, and cannot be seized by the creditors of the father. (Jenison v. Graves, 2 Blackf. 449, 450; also, Tillotson v. McCrillis, 11 Ver. 480; Burlingame v. Burlingame, 7 Cow. 93.) An emancipation may be inferred from the conduct of the parties. (Dennysville v. Trescott, 30 Maine, Shep. 473-4.) When a minor son makes a contract for his services on his own account, and his father knows of it and makes no objection, there is an implied assent "that the son shall have his earnings." (Whiting v. Earle, 3 Pick. 202.)

The balance of the purchase money was obtained from a source wholly independent of the husband, having also been borrowed from a sister.

III. The theory of the plaintiffs' instructions gives no effect whatever to the act above cited; they assume that the money received by Mrs. Dorris, which was paid for the land, (whether as a gift or a loan,) so soon as it came into her hands, *eo instante* became the money of A. P. Dorris, her husband; and, therefore, she could acquire no title to the real estate which was bought with it. This is a palpable error; it gives such a construction to the act as makes it destroy itself. For if a married woman cannot acquire money by gift, loan, or otherwise, without its becoming the money of her husband, it is not seen how she could acquire

any species of personal property, which would not instantly pass to the husband as soon as it came into her possession. This theory would prevent the wife from making any beneficial use or appropriation of money which she might acquire, although acquired in a manner and from a source entirely independent of her husband, and to which his creditors would have no right to look for payment of their debts.

*J. L. Smith*, for defendant in error.

I. The court very properly declared the law of the case in the first instruction given for the plaintiffs. (Waller et al. v. Mardus et al., 29 Mo. 25.) Mrs. Dorris' deed from Kerr was made in March, 1855; but Dorris and wife were in possession at the time of the contracting of the debt by Dorris. The judgment against Dorris was rendered in 1857; therefore, the husband being in possession, it cannot but be considered in the eye of the law as a fund in the husband's hands by which he obtained credit, and that his (Dorris') creditors trusted him with an eye to said property.

In the case of Schneider v. Slaihr, 20 Mo. 269, Judge Scott, in delivering the opinion of the court in the case, says in relation to the right of the husband in the wife's realty: "As the husband by virtue of his marriage was vested with an estate during its continuance in his wife's real property, the court should have proceeded in the suit and condemned that interest to sale," for the payment of the husband's debts. (See also Barbour & wife v. Wimer et al., 27 Mo. 140.)

II. The second instruction puts the case upon the theory, that even though the real estate in controversy was acquired by Mrs. Dorris after Dorris contracted the debt for which the property was sold, yet the plaintiff below acquired by such purchase whatever estate Dorris had therein. This second instruction does not run in conflict with the statute of 1849, exempting certain property of married women from sale under execution, because it only declares the law to be that Dorris, by virtue of the marriage relation with Mrs. Dorris, was vested in a life estate in said property, and that the

plaintiff, by the purchase of the same, was merely remitted to Dorris' possessory title thereto. (Mattock v. Stearns, 9 Ver. 326; 2 Kent's C. 131–2; Reeves' Dom. Rel. 27.)

III. The third instruction given the plaintiff is certainly the law in that view of the case. The money paid for the property by Mrs. Dorris was borrowed from her sister and son, the latter having earned the same while living in his father's family, and while he was a minor. The money, then, it is insisted, was the money of Dorris; and the real estate purchased with it by Mrs. Dorris was held by her in the nature of a resulting trust for his benefit, and was a subject of sale for his debts in the law. As to the rights of the father (Dorris) in his son's earnings and money thereby acquired, see Reeves' Dom. Rel. 63 & 290; 2 Kent's Com. 184–5, and authorities there cited; Ream v. Watkins, 27 Mo. 516.

There was nothing in the deed from Kerr to Mrs. Dorris that debarred Dorris from enjoying his marital rights in the real estate in controversy, or puts the same out of the reach of his creditors. (28 Barbour, N. Y. 343 to 360; 10 How., N. Y. 109; 6 Eng. Ch. 446 to 450; 7 id. 317 to 323.)

BATES, Judge, delivered the opinion of the court.

This is an action of ejectment. The plaintiff claims title to a lot in Jefferson City (possessed by the defendants) under a sheriff's sale, upon an execution against Dorris the husband. The lot was the property of Mrs. Dorris, purchased by her after the debt was contracted by her husband, for the payment of which the sheriff's sale was made.

The Circuit Court held, in effect, that the lot was subject to execution for that debt, and gave judgment for the plaintiff, and the defendants bring the case up by writ of error. They contend that by virtue of the first section of "An act to amend an act to regulate executions," (R. C. 1855, p. 754,) the lot was exempt from levy and sale under execution, and they are right. The act does not change or profess to change the rights of the husband in his wife's land, but does exempt such rights from levy and sale under execution for

the debts and liabilities stated in the section. It is his property; but, like wearing apparel or a mechanic's tools, is not subject to the execution.

The case presented admits Mrs. Dorris' title to the lot acquired by purchase, without any imputation of fraud or claim of a resulting trust.

Judgment reversed and cause remanded. Judge Dryden concurs; Judge Bay absent.